UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LINDA ANN WRIGHT, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:16-cv-00463 (JCH) |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | JANUARY 18, 2016 |
| Defendant. | : | |
| | : | |

**RULING RE: CROSS MOTIONS TO REVERSE (DOC. NO. 13) AND AFFIRM
(DOC. NO. 16) THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

## I.   INTRODUCTION

Plaintiff Linda Ann Wright ("Wright") has filed this action pursuant to section 405(g) of title 42 of the United States Code, seeking an Order reversing the final decision of the Commissioner of Social Security, defendant Carolyn Colvin ("Commissioner"), that Wright is not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  See Compl. (Doc. No. 1).  On August 8, 2016, Wright submitted a Motion for Judgment on the Pleadings to Reverse or Remand the Commissioner's decision (Doc No. 13).  Colvin has filed a cross Motion in which she asks the court to affirm the final decision denying Wright benefits.  See Def.'s Mot. to Affirm the Decision of the Commissioner (Doc. No. 16).

For the reasons that follow, the decision of the Administrative Law Judge is affirmed.

## II.   BACKGROUND

Wright was born in 1954 and was 58 years old at the time of the alleged onset of her disability.  Certified Tr. of the Record ("Tr.") at 183.  She had a part-time job in a

1

nursing home as a nursing assistant beginning in June 2012, and continuing through her application. Id. at 221. In that role, Wright would help transfer patients around the nursing home, interview new patients, and keep paperwork up to date. Id. at 79, 241. She indicated that, on a normal day, she would walk for 3 hours, stand for half an hour, sit for 15 minutes, and stoop for 15 minutes. Id. at 241. She ultimately left this job in September of 2013, due to her need for a total hip replacement and a knee brace, as well as shoulder and back pain. Id. at 65-66.

Wright applied for DIB on June 27, 2013, for a period of disability beginning on December 1, 2012. Id. at 26. Her claim was first denied on September 27, 2013, and then again after reconsideration on December 12, 2013. Id. She then filed a written request for a hearing on January 29, 2014, which was held before Administrative Law Judge ("ALJ") I. K. Harrington on January 12, 2015. The record before her contained the records of numerous physicians, both those who treated Wright, and physicians who reviewed her medical records.

Wright has three treating physicians: Alla Rudinskaya, M.D. ("Dr. Rudinskaya"), Karen Coblens, M.D. ("Dr. Coblens), and Sanjay Gupta, M.D. ("Dr. Gupta"). Dr. Rudinskaya has treated Wright for rheumatoid arthritis since 2007. Id. at 601. In her treatment notes from November 12, 2012, Wright told Dr. Rudinskaya that she generally felt well, with improvement in her shoulder after receiving a steroid injection. Id. at 385. Wright did have some discomfort in her hands and right hip. Id. On February 28, 2013, Wright told Dr. Rudinskaya that Wright had undergone a right total hip replacement in December, and that her arthritis was relatively stable, with only intermittent aches. Id. at 388. On June 17, 2013, Wright reported that her joints had become increasingly stiff,

particularly in her shoulders, hands, ankles, and feet. Id. at 392. When Wright returned to Dr. Rudinskaya on October 14, 2013, Wright explained that her shoulder pain had led her to quit her job. Id. at 573. Finally, on December 6, 2013, Wright reported to Dr. Rudinskaya that her joint pain had improved, but that she continued to feel swelling and morning stiffness, as well as shoulder and neck pain. Id. at 608. Later visits on February 21, March 10, and June 26, 2014 continued the pattern of increasing and decreasing pain. See id. at 620 (February 21 meeting indicated significant pain), 737 (March 10 follow-up with increasing pain), 734 (June 26 meeting wherein Wright reported that she felt well without any significant pain).

Dr. Rudinskaya completed a Rheumatoid Arthritis Impairment Questionnaire on December 6, 2013. Id. at 601. Her answers confirm a diagnosis of rheumatoid arthritis, with pain and limited movement in Wright's neck, mid back, lower back, pelvis, shoulders, knees, feet, elbows, wrists, the right hip, and all fingers. Id. at 601. Dr. Rudinskaya also indicated that Wright had a limited ability to grasp and manipulate objects or reach overhead. Id. at 602. Finally, Dr. Rudinskaya noted that she believed Wright was able to sit for a total of two hours in an hour workday, and stand or walk for one hour each workday. Id. at 604. Dr. Rudinskaya wrote that she believed that Wright would be best suited to stand for an hour, then sit for an hour. Id.

Wright began seeing Dr. Coblens in February of 2006 for hypertension, asthma, and depression. Id. at 621. Dr. Coblens noted that Wright had edema in her lower leg, and that she felt puffy all over. Id. at 442, 431. On November 15, 2013, Wright requested that Dr. Coblens complete forms regarding Wright's disability, and she reported to Dr. Coblens that Wright had significant joint pain in her hands, shoulders,

and elbows. Id. at 593. Dr. Coblens noted that she believed that Wright was severely limited in her activities and could not work even a part time job. Id. at 594.

Dr. Coblens also completed a Multiple Impairment questionnaire on November 15, 2013, wherein she stated that Wright had rheumatoid arthritis, fatigue, sleep apnea, and hypertension which were progressive and unlikely to improve. Id. at 584, 591. She noted that she could observe the swelling, but that she relied upon the laboratory and diagnostic tests of Dr. Rudinskaya. Id. at 584-85. Dr. Coblens estimated that Wright's pain level was a ten out of ten, and that her fatigue level was eight or nine out of ten. Id. at 586. She noted that Wright could neither sit nor stand for more than an hour during an eight hour work day, and that she would need to get up and move around every 30 minutes. Id. Dr. Coblens stressed throughout her responses that Wright's limitations would prevent her from working. See id. at 590 (writing in "can't work" in response to the multiple choice question "please estimate, on average, how often you patient is likely to be absent from work.").

On January 6, 2015, Dr. Coblens filled out a disability impairment questionnaire, wherein she diagnosed rheumatoid arthritis, muscle pain, hypertension, and depression. Id. at 765. She noted that she now believed that Wright could work in a seated position for four hours, with breaks, but could still not stand or walk for over an hour. Id. at 767. She maintained that Wright would need to stand every 30 minutes for around five to ten minutes before she could return to work. Id. She also revised her opinion as to how often Wright would be absent from work to "two to three times per month" from her blanket statement that Wright could not work. Compare id. at 590 (writing in "can't

work") with id. at 769 (checking off the "two to three times a month" square, not the "more than three times a month" square).

Dr. Gupta was the orthopedic surgeon who performed Wright's total right hip arthroplasty. Id. at 422. By January 25, 2013, Wright had recovered enough that her gait was unremarkable, her range of hip motion was excellent, and that she was not taking any pain medication. Id. at 781. She returned to Dr. Gupta on March 24, 2014, due to pain in her knee, for which he administered a steroid injection and prescribed a knee brace. Id. at 786. This treatment appears to have helped, as she stated that she felt "quite comfortable" on April 23, 2014. Id. at 791.

The Social Security Administration ("SSA") also had one doctor meet with Wright and four state doctors review Wright's records. She was evaluated by Dr. William Higgins ("Dr. Higgins"), a SSA consultative psychologist on September 2011, 2013. Id. at 518. He noted that she was depressed, no longer interested in other people or things that she used to enjoy. Id. at 519. He also found that Wright's medical problems, including rheumatoid arthritis, make her very tired at the end of every day of work, even though she was only working 16 hours per week. Id. Thus, he found that without a more successful treatment plan, he could not see her returning to work. Id.

Wright's medical records were reviewed by Meghana Karande, M.D. ("Dr. Karande"), a state agency physician, Robert Sutton, Ph.D. ("Dr. Sutton") a state agency psychologist, Kirk Johnson, Psy.D. ("Dr. Johnson"), a state agency physician, and Rafael Wurzel, M.D. ("Dr. Wurzel"), a state agency physician. Dr. Karande reviewed the record on September 16, 2013, and found that Wright could stand or walk for approximately six hours, and sit for approximately six hours. Id. at 107, 109. Dr. Sutton

reviewed the record on September 24, 2013, and diagnosed Wright with a severe affective disorder and disorder of the back, but non-severe inflammatory arthritis. Id. at 107.

Dr. Johnson reviewed the record on November 13, 2013, and diagnosed Wright with a disorder of the back, inflammatory arthritis, obesity, and an affective disorder, all severe. Id. at 120. He determined that Wright had no limitation on her daily living, and only mild difficulties with social functioning. Id. Finally, Dr. Wurzel reviewed the record on December 11, 2013, to assess Wright's Residual Functional Capacity ("RFC"). Id. at 121-123. Dr. Wurzel found that Wright could stand for about six hours, and walk for about six hours, as long as normal breaks were allowed. Id. at 122. He found that Wright had limited ability to reach overhead. Id. at 123.

Wright also testified at her hearing that her pain centered in her lower back, and that when she sits too long, her hips and back begin to ache. Id. at 67. She estimated that she could walk for about thirty minutes before needing to sit down for fifteen. Id. at 72. Although her doctor told her that she should see someone for depression, she did not due to her fear of the social stigma attached to seeing a psychiatrist. Id. She testified that she is able to perform daily activities such as cleaning and shopping for groceries, but does need assistance with heavy items. Id. at 74-75.

Finally, the ALJ heard testimony from a vocational expert that a hypothetical individual of Wright's age, education and professional background who would be capable of light work could perform Wright's past work as an administrative assistant. Id. at 82. The vocational expert also reported that this hypothetical individual could work as an office clerk, a data entry clerk, an order clerk, and a hotel desk clerk. Id. On

May 7, 2015, ALJ Harrington denied Wright's DIB application, noting that despite her rheumatoid arthritis, affective disorder, and degenerative back pain, she could perform light work as defined in 20 C.F.R. 505.1567(b), so long as she was permitted to wear a knee brace and limited to frequent balancing, stooping, kneeling, crouching and climbing of ramps and stairs, and only occasional crawling and climbing ladders, ropes or scaffolds, as well as avoiding concentrated exposure to hazards. Id. at 42, 47.

Wright's petition for review of the ALJ's decision was denied by the Appeals council on January 20, 2016. Id. at 4. This appeal timely followed.

### III.   LEGAL STANDARD

In reviewing a Social Security disability determination, a court will set aside the decision of an ALJ "only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). As the Supreme Court has instructed, "substantial evidence . . . [is] more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). Rather, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D. Conn. 2003). In other words, "[w]here an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not

substitute its judgment for that of the Commissioner." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

## IV. DISCUSSION

For the purposes of DIB, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). Claims under the Social Security Act are considered using a standard sequential five-step analysis:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schwieker, 675 F.2d 464, 467 (2d Cir. 1982)).

Wright advances two arguments that the decision of the ALJ should be reversed or remanded. First, she argues that the ALJ failed to properly weigh the medical opinion evidence when the ALJ determined Wright's RFC. Mem. of Law in Support of Pl.'s Mot. for Judgment on the Pleadings ("Pl.'s Mem.") at 1. Second, Wright argues that the ALJ failed to properly evaluate Wright's credibility during the same stage of her

8

analysis. Id. at 6.  Neither argument is persuasive.  Therefore, the court will deny Wright's Motion and grant the Government's Motion to Affirm the Decision of the Commissioner.

> 1. The Decision to Give the Opinions of Wright's Treating Physicians No Weight was Supported by Substantial Evidence

When the ALJ is determining the severity of a claimant's impairment and the claimant's RFC, the ALJ must consider the opinion of the claimant's treating physicians and give it "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Burgess v. Astrue, 537 F.2d 117, 128 (2d Cir. 2008).  If the ALJ decides not to give the opinion of a treating physician controlling weight, the ALJ's ruling must indicate what weight he or she is giving the opinion of the treating physician, and provide good reasons for that decision.  Greek v. Colvin 802 F.3d 370, 375 (2d. Cir. 2015).  In doing so, the ALJ "must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam).

In the instant matter, the ALJ gave Dr. Rudinskaya and Dr. Coblens no weight with regards to Wright's RFC.  Id. at 46.  Specifically, the ALJ stated that both Dr. Rudinskaya's and Dr. Coblens' opinions were given no weight because they were inconsistent with the treatment notes and Wright's own description of her daily life, and the opinions were unsupported by the other opinion evidence.  Id.  Wright argues that the ALJ had insufficient support to make these conclusions, because both Dr.

9

Rudinskaya and Dr. Coblens based their opinions on physical examinations. Pl.'s Mem. at 2. Wright also argues it was inappropriate for the ALJ to give the opinion of a non-examining physician more weight than the opinion of a treating physician. Id. at 3.

The ALJ's decision to give the opinions of Dr. Rudinskaya and Dr. Coblens no weight is supported by substantial evidence, and therefore the district court should not upset the decision of the ALJ. Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests of adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."); see also 42 U.S.C. § 405(g). Specifically, the ALJ noted that the opinions of both Dr. Rudinskaya and Dr. Coblens as to Wright's RFC were inconsistent with their own treatment notes. Tr. at 46. After reviewing the record, the court finds that there is substantial evidence supporting this conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Dr. Rudinskaya's notes fluctuate between positive and negative prognoses. For example, on February 28, 2013, Dr. Rudinskaya noted that Wright's arthritis was relatively stable with only mild intermittent aches and stiffness in the morning. Tr. at 388. Only four months later, Dr. Rudinskaya noted that Wrights joints had become increasingly stiff, particularly in her hands, ankles, and feet. Id. at 392. Then on December 6, 2013, Dr. Rudinskaya noted that Wright's pain had improved, describing it as only moderate pain. Id. at 604, 608. In June, 2014, Dr. Rudinskaya noted that Wright's rheumatoid arthritis was "doing well." Id. at 736. The ALJ was entitled to discount the opinion of Dr. Rudinskaya that Wright could not sit or stand for over an

hour or two when there was substantial evidence from within Dr. Rudinskaya's own notes that Wright's condition was improving. The ALJ's decision to give no weight to Dr. Rudinskaya's opinions due to their inconsistency with her own notes is supported by substantial evidence. See Matta v. Astrue, 508 F. App'x 53, 57 (2d Cir. 2013) (acknowledging that the ALJ to discount the opinion of a treating physician when it is inconsistent with other parts of the record).

Dr. Coblens' opinion is also inconsistent with the record, at least insofar as is necessary to support the decision of the ALJ to give it no weight. See id. Notably, she filled out two Disability Questionnaires: one on November 15, 2013, and the other on January 6, 2015. Tr. at 584, 765. In the first questionnaire, Dr. Coblens took the uncompromising position that Wright could not work due to her severe pain, and that Wright could neither sit nor stand for more than an hour at a time. Id. at 586-87. By January, only a month and a half later, Dr. Coblens' noted great improvement in Wright's condition. Specifically, Dr. Coblens stated in the January questionnaire that, in her opinion, Wright could sit for four hours with breaks, and would only miss work two to three times per month. Id. at 767, 769. The inconsistencies in these reports, both when compared to each other and to the reports of Dr. Rudinskaya, constitute "substantial evidence" of the inconsistency of Dr. Coblens' opinion such that it was not error for the ALJ to determine that Dr. Coblens' reports were entitled to little weight. See Matta, 508 F. App'x at 57.

The ALJ also had substantial evidence in the medical records that contradicted the opinion of Dr. Rudinskaya and Dr. Coblens that Wright was so disabled that she was unable to continue to work. As noted by the ALJ, Wright's rheumatoid arthritis

seemed to continuously improve throughout the record. Tr. at 44. For example, on November 12, 2012, Wright reported feeling well with only slight discomfort and swelling in her hands. Id. at 385. Again, in February 2013, Dr. Rudinskaya reported that Wright's rheumatoid arthritis was relatively stable, and she only had some aches and stiffness in the morning. Tr. at 388. In October 2013, Wright reported that she was not doing well, with increased pain in both shoulders and pain and swelling in her hands, while her examination revealed synovitis in her metacarpophalangeal joints and her ankles. Id. at 576. By December of the same year the synovitis in her ankles had improved. Cf. id. at 608-611 (noting that Wright's joint pain had improved, but that she still had synovitis in her hands without mentioning her ankles).

Wright also complained of knee pain in March, 2014, id. at 787, but after being prescribed a knee brace, she reported that she felt comfortable one month later. Id. at 791-92. In June of 2014, Wright reported that she felt well, with no complaints and no significant pain. Id. at 627.

The record paints a picture of a woman who is managing her rheumatoid arthritis well, not the picture of a woman disabled by it that Dr. Rudinskaya's and Dr. Coblens' opinions paint. See id. at 604 et seq., 584 et seq. (Questionnaires from both doctors indicating their conclusions that Wright would be unable to work due to missed days and inability to remain seated or standing). The inconsistency of the record with Wright's doctors' opinions constitutes substantial evidence for the ALJ to give the treating physicians no weight. See Michels v. Astrue, 297 F. App'x 74, 76 (2d Cir. 2008).

The ALJ also determined that the opinions of Dr. Rudinskaya and Dr. Coblens were unsupported by other opinion evidence. Tr. at 46. Wright argues that the ALJ's

reliance on non-examining opinions over the opinions of treating physicians requires reversal.  Pl.'s Mem. at 3-4.  The opinion of a non-examining doctor is opinion evidence, and as such should be given weight if supported by medical evidence in the record. Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012); see also 20 C.F.R. § 416.927(e)(2)(i)[1].  The ALJ is permitted to conclude that the opinion of a treating source should be given less weight than that of a non-examining source, if the opinion of the non-examining source is more consistent with the records as a whole.  Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) aff'd No. 15-2087, 2016 WL 3391243 at * 2 (2d Cir. June 15, 2016).  As noted above, the ALJ found that the opinions of the treating physicians were inconsistent with the record.  The ALJ also specifically stated that the medical consultants' opinions were "supported with explanations" that "reflect a thorough review of the available records and are supportable."  Tr. at 45.  The ALJ provided good reasons why she was giving the opinions of state agency consultants greater weight, and therefore should not be reversed by the district court.  See Donegan v. Colvin, No. 15-cv-655, 2016 WL 5678552 at * 10-11 (E.D.N.Y. Sept. 30, 2016) (upholding the determination of the ALJ to give little weight to the opinion of a treating physician where that opinion was inconsistent with the record).

The ALJ also found the opinions of Dr. Rudinskaya and Dr. Coblens contrary to Wright's own report of her daily activities.  Wright described her daily activities in a report on July 23, 2013.  Tr. at 232.  Wright's report indicates that she was able to do

---

[1] "State Agency medical and psychological consultants . . . are highly qualified physicians, psychologists and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [the claimant is] disabled."

13

laundry, dust, vacuum, clean the bathroom, cook, wash dishes, weed the garden and wash plants.  Id. at 235.  Confusingly, the same report also indicates that Wright's illness prevents her from cleaning the "house properly," cooking, gardening, weeding, mowing the lawn, painting, cleaning her car, or going for long walks, and also indicates that the question of whether or not she does lawn care "does not apply." Id. at 233, 235.  Thus, the ALJ had an inconsistent record from Wright herself as to her daily activities.  However, assuming that Wright only performed the household tasks that she testified to—specifically cleaning parts of the house and driving two times a week to do grocery shopping alone—id. at 74-75, the performance of those tasks constitutes some evidence that is inconsistent with the treating physicians' opinions.  Compare id. at 235 with id. at 585, 766 (Dr. Coblens description of Wright's "daily fatigue.").  The performance of those tasks is relevant evidence in the determination of Wright's disability, 20 C.F.R. § 404.1529(c)(3)(i), and the ALJ can and should consider it, in conjunction with the rest of the evidence, to determine Wright's RFC.  See Roma v. Astrue, 468 F. App'x 16, 19 (2d Cir. 2012) (noting that the ALJ could decline to defer to a treating physician's opinion when it contradicted the claimant's own testimony as to their activities).

      Finally, Wright argues that the ALJ did not specifically consider the specializations of the treating physicians, nor the length of their treatment of Wright.  Pl.'s Mem. at 5.  Contrary to Wright's argument, the ALJ specifically noted Dr. Rudinskaya's specialty of rheumatology and the length of time that she treated Wright.  Tr. at 43.  The ALJ also noted that Wright had been seeing Dr. Coblens for primary care since before the onset date.  Id.  Further, although the regulations do require the ALJ to

14

consider certain factors, the Second Circuit has held that no "slavish recitation of each and every factor" is required "where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013); see 20 C.F.R. § 404.1527(c) (outlining the factors to be considered). The ALJ's reasoning for why she did not give the treating physicians' opinion weight is clear and supported by substantial evidence.

### 2. The ALJ Properly Evaluated Ms. Wright's Credibility

Wright also argues that the ALJ did not properly set out her reasons for deciding to reject Wright's testimony as "not entirely credible" with regards to the intensity, persistence, and limiting effects of her symptoms. Pl.'s Mem. at 6. Wright argues that the ALJ erred in finding insufficient evidence of disabling pain and criticizing the "conservative measures" of Wright's treatment, as well as considering that Wright stopped working for reasons unrelated to her disability in 2010. Pl.'s Mem. at 7-10. As Wright concedes, however, the ALJ is free to accept or reject the testimony of a witness so long as the ALJ sets forth her reasons why "with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988).

Here, the ALJ listed many reasons supported by substantial evidence in the record as to why she did not find Wright's testimony entirely credible. First, the ALJ admitted that Wright's impairments do limit her overall functioning, but did not find those limitations to be so severe as to be disabling. Tr. at 44. As noted above, the medical evidence suggests that Wright's pain was occasionally bad, but often was not. Based on this evidence, the ALJ's determination that the objective medical evidence did not indicate disabling pain is supported by substantial evidence. See supra at p. 10-12.

15

Additionally, the ALJ considered Wright's daily activities and found that her ability to care for herself and her cats, as well as do household chores, the laundry, and run errands all suggest that Wright has a greater RFC than Wright indicated herself.  Tr. at 45, 232, 235.  But see, id. at 233 (noting that her husband also helps with those chores without explaining how often or how much he helps). The daily activities are relevant evidence of Wright's disability, and as such are properly considered by the ALJ in determining what Wright's credibility is.  Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011).

The ALJ also noted that Wright continued to work, albeit in a part time job, after her alleged onset date.  Id.  The ALJ acknowledged Wright's steady work history, indicating that this "enhanced her credibility."  Id.  However, the ALJ decided that, considering all of the evidence, "the claimant's work history is outweighed by the other factors discussed in this decision."  Id.  This is true despite the ALJ's ambiguous statement that Wright left her job due to a re-organization, which doesn't mention that she took a new part-time job in 2012, as the ALJ was not stating that he was disregarding Wright's work history, merely that it was "only one factor in evaluating disability claims."  Id.  Indeed, the second circuit has cautioned that the ALJ should make inferences from a claimant's work history with "great care. . . . emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony."  Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998).

Wright is correct to note that the ALJ should not make their decision regarding the claimant's level of subjective pain based on a belief that the level of invasiveness of the claimant's treatment necessarily correlates with the severity of the impairment.

Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008). Here, the ALJ did not proceed under that assumption, however, but rather remarked that the conservative treatments had been successful at treating and managing Wright's disability. Tr. at 44-45. Specifically, the ALJ noted that the knee brace was helping manage her osteoarthritic knee pain, the hip replacement surgery was "generally successful in relieving the symptoms," and that her rheumatoid arthritis symptoms were being treated with medications that were "relatively effective." Id. The ALJ was entitled to consider whether treatment plans enabled Wright to continue to work. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (noting that the claimant's condition improved with medication such that the ALJ's determination that she could perform unskilled work was well supported).

"It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Gates v. Astrue, 338 F. App'x 46, 48 (2d Cir. 2009) (citing Aponte v. Sec'y, Dep't of Health & Human Servs.of the United States, 728 F.2d 588, 591 (2d Cir. 1984)). Here, the decision of the ALJ to give Wright's testimony little weight was supported by substantial evidence, and specifically explained in detail in her decision. Tr. at 45. Therefore, "the court must uphold the ALJ's decision to discount [Wright's] subjective complaints of pain." Aponte, 728 F. 2d at 591.

## V.  CONCLUSION

After considering Wright's arguments for reversal or remand, the court finds them unpersuasive. The Motion to for Judgment on the Pleadings is **DENIED**. The Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED**.

**SO ORDERED.**

      Dated this 18th day of January, 2017 at New Haven, Connecticut.

                                      /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge